**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cr. No. 08-20378 |
| | ) | |
| BRIDGES "SUTTON" McRAE, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**ORDER DENYING DEFENDANT'S MOTION FOR CHANGE OF VENUE**
_____

Before the Court is Defendant's Motion for Change of Venue (D.E. # 16) filed on

February 18, 2009.  Plaintiff has responded in opposition, and both parties have filed reply

briefs.  For the reasons set forth below, the Motion is **DENIED**.

**BACKGROUND**

On November 18, 2008, Defendant Bridges "Sutton" McRae was indicted on one count

of depriving Duanna Johnson ("Johnson") of her civil rights, namely to be free from

unreasonable force by one acting under color of state law, pursuant to 18 U.S.C. § 242.  On

February 11, 2008, Defendant was employed as a Memphis police officer.  Johnson, a

transgender female impersonator, was under arrest at the jail when Defendant allegedly beat

Johnson.  The incident was captured by a camera in the booking area of the jail.  Local media

first aired the video in June 2008.

Defendant moves for a change of venue within the District from the Western Division

1

(Memphis) to the Eastern Division (Jackson) due to the pretrial publicity the incident has received.  First, Defendant argues that the video of the incident has been aired on local and national television many times since it became public.  In response to the video, several public figures including the Mayor of the City Memphis, the Director of the Memphis Police Department, and a United States Congressman have all publicly commented on the incident referring to it as "horrible," "disgusting," "a hate crime," and a violation of human rights.  Furthermore, attorneys representing Johnson in the civil suit against the City have discussed the incident in the media, called Defendant by name, and speculated about the prospect of criminal charges against Defendant.  Defendant also cites the media publication of unsupported and unrelated allegations of misconduct taken from his MPD personnel file.  Much of this information, Defendant argues, would be inadmissible at trial.  Finally, Defendant contends that media reports have misrepresented the incident as a beating,  portrayed Defendant as a "rogue cop," and offered only Johnson's point of view of the incident.  Based on these examples of pretrial publicity, Defendant argues that a reasonable likelihood exists that he cannot receive a fair trial in Memphis.  Because Defendant was a police officer and is accused of violating the public trust, his alleged violation "particularly enrages a local community."  If Defendant is tried in Memphis, he cannot receive a fair trial because his guilt will be presumed.

The government has responded that the coverage of the incident has been "intermittent and generally perfunctory."  The Court should presume that pretrial publicity has prejudiced a defendant only where "an inflammatory, circuslike atmosphere pervades both the courthouse and the surrounding community."  In the absence of presumed prejudice, the Court must determine whether there is actual prejudice by questioning potential jurors during voir dire.  The

government argues that the media attention in this case does not compare to the media attention

in other cases where change of venue was denied.  Furthermore, other notorious criminal trials in

this District such as the Tennessee Waltz trials had substantially more media coverage than the

coverage of this incident.  The fact that the video has been broadcast and remained widely

available is not enough to justify a change of venue.  Likewise, cases from other venues

Defendant cites in support involved "significantly more intense media coverage."[1]  In this case

many of the media accounts of the incident Defendant has cited and attached as exhibits to his

Motion are taken from sources outside of this District such as the *New York Times* and the

*Boston Globe*.  According to the government, much of the same television coverage of the

incident broadcast in Memphis was also broadcast in Jackson.  The largest exhibit Defendant has

produced is the hard copy of an internet blog for local events, thaddeusmatthews.com, most of

which consists of anonymous reader comments to the blogger's posts concerning the incident

and subsequent developments.  In light of the comparatively light media attention devoted to this

case, the government argues that the proper method for discovering any actual prejudice as to

this Defendant is through voir dire.


**ANALYSIS**

----

[1] These include *Sheppard v. Maxwell*, 384 U.S. 333 (1966) and *United State v. McVeigh*, 918 F. Supp. 1467 (W.D. Okla. 1996).  The *Sheppard* case inspired the television series "The Fugitive" and a movie of the same name; *McVeigh* was the prosecution of the man accused of plotting the bombing of the Oklahoma City federal building.

3

It is undisputed that if pretrial publicity jeopardizes a defendant's right to a fair trial by an

impartial jury, the trial court should grant a change in venue.[2]  Prejudice resulting from pretrial

publicity can be presumptive or actual.[3]  Presumptive prejudice from pretrial publicity occurs

where an inflammatory, circus-like atmosphere pervades both the courthouse and the

surrounding community.[4]  However, prejudice from pretrial publicity is rarely presumed.[5]

When there is no such presumption of prejudice, the trial court must consider whether

pretrial publicity has created actual prejudice against the defendant.[6]  The Court should review

the media coverage as well as the substance of the jurors' statements at voir dire to decide

"whether a community-wide sentiment exists against the defendant."[7]  The United States

Supreme Court has observed that this is the proper role of the trial court.[8]  The trial court is

located "where the publicity is said to have had its effect," and the presiding judge may bring

"his own perception of the depth and extent of news stories that might influence a juror."[9]  The

---

[2] *Irvin v. Dowd,* 366 U.S. 717, 722-24, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); *Ritchie v. Rogers,* 313 F.3d 948, 956 (6th Cir. 2002).

[3] *Nevers v. Killinger,* 169 F.3d 352, 362 (6th Cir.1999), *abrogated on other grounds, Harris v. Stovall,* 212 F.3d 940, 942-43 (6th Cir. 2000).

[4] *Ritchie,* 313 F.3d at 952-53; *Gall v. Parker,* 231 F.3d 265, 309 (6th Cir. 2000).

[5] *DeLisle v. Rivers,* 161 F.3d 370, 382 (6th Cir. 1998).

[6] *Ritchie,* 313 F.3d at 962.

[7] *Nevers,* 169 F.3d at 366.

[8] *Mu'Min v. Virginia*, 500 U.S. 415, 427, 111 S.Ct. 1899, 1906, 114 L.Ed.2d 493 (1991).

[9] *Id.*

4

court is further vested with wide discretion in conducting voir dire in the area of pretrial publicity and in other areas of inquiry that might tend to show juror bias.[10]  The Sixth Circuit has held that the "primary tool for discerning actual prejudice is a searching voir dire of prospective jurors"[11] and that in the absence of presumed prejudice, "the actual voir dire becomes the centerpiece of attention on the motion to change the venue."[12]  Negative media coverage by itself is insufficient to establish actual prejudice.[13]  "Even the existence of a juror's preconceived notion as to the guilt or innocence of the defendant, without more, is not sufficient to rebut the presumption of impartiality."[14]  "A prospective juror must be able to lay aside his or her impressions or opinions and render a verdict based upon the evidence presented in court."[15]  The relevant questions are "did [the] juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed."[16]

The Court holds that the pretrial publicity cited by Defendant is not so inflammatory or circus-like that the Court must presume prejudice against Defendant.  It is true that the incident

---

[10] *Id.*

[11] *Id.*

[12] *Ritchie*, 313 F.3d at 955 n. 11.

[13] *Nevers,* 169 F.3d at 366-67.

[14] *Id.* (quoting *DeLisle,* 161 F.3d at 382) ("[M]ere prior knowledge of the existence of the case, or familiarity with the issues involved, or even some preexisting opinion as to the merits, does not in and of itself raise a presumption of jury taint....").

[15] *Foley v. Parker*, 488 F.3d 377, 387 (6th Cir. 2007).

[16] *Patton v. Yount,* 467 U.S. 1025, 1036, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984).

which led to the indictment against the Defendant has received local and national media

attention.  Defendant has presented several reports from Memphis television stations and

newspapers as well as the *New York Times* (exs. E, H), the *Sacramento Bee* (ex. G), the

*Cleveland Plain Dealer* (ex. I), and the *Boston Globe* (ex. J), all of which covered the initial

incident and the video which purports to show Defendant in a physical altercation with Johnson.

Within Memphis and the Western Division of the Western District, articles from the *Memphis*

*Commercial Appeal*, the *Memphis Flyer*, and several local television stations have reported

subsequent developments related to the incident and Defendant: Memphis Police Director Larry

Godwin's remarks about the video (ex. M); Defendant's dismissal from the MPD (ex. Q);

Johnson's later arrest for prostitution (ex. S); Johnson's murder (ex. T); a vigil held for Johnson

(ex. U); Defendant's indictment (ex. CC); and an editorial on the incident and Defendant's

dismissal from the MPD (ex. EE).  According to circulation statistics cited by Defendant, the

*Memphis Commercial Appeal* (ex. K) reached over 350,000 readers on weekdays and over

500,000 readers on Sunday during the relevant period when the articles appeared in that

publication.  The incident has invited further comment on the internet at websites such as Police

Complaint Center (ex. F) and  thaddeusmatthews.com (exs. X and DD).  Despite this widespread

and ongoing coverage devoted to Defendant and the incident, it cannot be said that pretrial

publicity in this case is the rare situation where prejudice must be presumed.  Nothing in the

reporting indicates the kind of "wave of public passion" or a "trial atmosphere that [has] been

utterly corrupted by press coverage" that would suggest presumptive prejudice and the threat of

an unfair trial.[17]  Thus, it can hardly be said that the pretrial publicity in this case has created a circus-like atmosphere, which gives rise to a presumption of prejudice against Defendant.

The coverage and publicity in this case is clearly distinguishable from the facts presented in the Supreme Court cases Defendant has cited for support.  The case of *Rideau v. Louisiana* involved a "televised jail-house interrogation of a defendant, in which he confessed to a robbery/kidnapping/murder that he had committed only the previous night, seen by over one-third of the community's residents two weeks before his arraignment and less than two months before his trial."[18]  The Sixth Circuit has limited the application of *Rideau* to the facts of that case because the publicity resulted in a trial that the Supreme Court described as but a "hollow formality."[19]  Likewise, the publicity here does not evidence a "carnival atmosphere" like those found in *Sheppard v. Maxwell* [20] and *Estes v. Texas*.[21]  The Sixth Circuit described the publicity in *Sheppard* as a "television circus" and observed that the coverage of that trial made "the media hype surrounding the O.J. Simpson trial appear tame."[22]  The Sixth Circuit characterized *Estes* as a "circus" where the trial court permitted "intrusions of the press, which was allowed to sit within the bar of the court and to overrun it with television equipment."[23]  The Supreme Court

---

[17] *See Yount*, 467 U.S. at 1033; *Murphy v. Florida*, 421 U.S. 794, 798, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975); *Ritchie*, 313 F.3d at 955 n. 11.

[18] 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963).

[19] *Nevers*, 169 F.3d at 365.

[20] 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966).

[21] 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965).

[22] *Nevers*, 169 F.3d at 365.

[23] *Id*. (quoting *Murphy*, 421 U.S. at 799).

has commented that in these three cases "the influence of news media, either in the community at large or in the courtroom itself, pervaded the proceedings."[24]  None of the publicity cited by Defendant in the instant case approaches the level of media attention in those cases.  Therefore, the Court concludes that the pretrial publicity in this case does not give rise to a presumption of prejudice.

Without presumptive prejudice, the Court must consider whether pretrial publicity has created actual prejudice, that is whether pretrial publicity has resulted in community-wide sentiment against Defendant.  There is nothing before the Court from which it could find that such sentiment exists.  With respect to the media coverage, it is undisputed that there have been several reports about Defendant, the incident with Johnson, and subsequent events unrelated to the merits of this case.  The pretrial publicity reflects the fact that the incident is of a violent nature and, what is more, was allegedly captured on video.  Local leaders have commented on the video and directed accusatory statements at Defendant in media reports.  However, negative media coverage alone is not enough to establish actual prejudice.

Sixth Circuit authority is clear that the Court's consideration of actual prejudice created by pretrial publicity must include a thorough voir dire of potential jurors.  The Court must be satisfied that jurors who have been exposed to pretrial publicity do not have a fixed opinion concerning Defendant's guilt and will be able to put aside their views and render a verdict based on the evidence, not pretrial media reports.[25]  Even where jurors claim no bias or opinion due to pretrial publicity, the Court should determine whether their claims of impartiality can be

---

[24] *Murphy*, 421 U.S. at 799.

[25] *Foley*, 488 F.3d at 387-389.

believed by considering among other things how many potential jurors were excused during voir dire for bias.[26]  Clearly these are not questions upon which the Court can make findings in a pretrial motion.  The Court is not and will not be in a position to properly consider whether community-wide sentiment exists against Defendant which would preclude a fair trial until the Court begins the jury selection process in this case.  Furthermore, the Court believes that adequate safeguards are in place to consider what actual prejudice if any exists against this Defendant during voir dire.  Therefore, Defendant's Motion is **DENIED** without prejudice.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: April 15th, 2009.

---

[26] *Id.* (jurors credible where 44 out of 98 potential jurors disqualified because of opinion of guilt, knowledge of the case, or bias in favor of the prosecution).  *See also Murphy,* 421 U.S. at 803 (jurors credible where 20 out of 78 disqualified because of opinion of guilt not enough to "suggest[] a community with sentiment so poisoned against petitioner as to impeach the indifference of jurors who displayed no animus of their own").  *Cf. Irvin,* 366 U.S. at 727 (basis for finding jurors not credible where 268 of 430 excused on challenges for having fixed opinions as to guilt).